IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | CASE NO. 3:21-CR-00340-ECM-SMD |
| | ) | |
| DEAUNDRE LAMAR COBB | ) | |
| | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I.    INTRODUCTION

Pro se Defendant, Deaundre Lamar Cobb ("Cobb"), is charged in a one-count indictment with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1).  Indictment (Doc. 1).  Cobb fled from police during a late night traffic stop and was subsequently found hiding in a fenced backyard behind an apartment building under some bushes.  Mot. to Suppress (Doc. 26) at 2.  The police arrested Cobb and found two pistols and a backpack containing ammunition and identifying information under the bushes where he was hiding.  *Id.*  Cobb now moves to suppress the firearms and other evidence arguing that there was no probable cause for the traffic stop and that his warrantless arrest for a misdemeanor was unlawful because the officer making the arrest did not personally witness the violation.  Supplemental Mot. (Doc 44); Mot. to Suppress (Doc. 26) at  3-10.  Undersigned held an evidentiary hearing on June 1, 2022, and for the reasons that follow RECOMMENDS that Cobb's motion to suppress be DENIED in its entirety.

## II.    FINDINGS OF FACT

At the hearing, the Government introduced body and dash cam video from Officer James Thomas ("Officer Thomas") and body cam video from Officer Andrew Lanier ("Officer Lanier") of the Auburn, Alabama, Police Department.  Gov't Exs. A-C (Doc. 47-1). Cobb introduced Officer Thomas's and Lieutenant James Pescia's ("Lt. Pescia") police reports.  Def. Exs. 1 & 2 (Doc. 47-2).  Officer Thomas and Lt. Pescia both testified.  Tr. (Doc. 48).

The evidence establishes that at approximately 2:45 a.m. on July 26, 2019, Officer Thomas was on patrol in a marked police SUV when a black Kia Sorento SUV passed him on a two-way street.  Def's Ex. 1, Thomas Report (Doc. 47-2); Tr. (Doc. 48) at 7-9.  He looked in his rearview mirror and noticed that the Kia's license tag light was out.  Tr. (Doc. 48) at 9, 29.  He made a U turn and got behind the Kia and briefly turned off his headlights to confirm that the tag light was out.  *Id.*  He also observed that the license tag was expired.  *Id.* at 10-11, 30.  The Kia pulled into the parking lot of an apartment complex, and Officer Thomas radioed in the tag number and turned on his emergency lights to initiate a traffic stop.  *Id.*

Officer Thomas pulled up behind the Kia, but before he could exit his vehicle to speak with the driver, the Kia suddenly backed up and made a three point turn in front of him almost striking his patrol vehicle.  *Id.*  As the Kia shifted from reverse to forward, Officer Thomas could clearly see the driver who he described as a Black male wearing a red shirt and black hat.  *Id.*  The driver sped out of the parking lot and ran a red light.  *Id.*

2

Officer Thomas turned on his sirens and gave chase, but he quickly lost sight of the Kia. *Id.* As the situation developed, Officer Thomas gave continual updates over the radio and provided a description of the driver. Tr. (Doc. 48) at 12, 42.

Additional police officers started responding, and they set up roadblocks and began searching the area for the Kia and its driver. *Id.* at 12, 42-43. Officer Thomas soon located the Kia backed into a parking space in front of Building 725 at Logan Square Apartments. *Id.* at 13-14, 42. The Kia was unoccupied, and he called in its location and requested backup. *Id.* at 13-14. When Officer Lanier arrived, they began searching the area for the driver. *Id.* at 14-15. Building 725 has an outdoor stairway leading to the second floor. *Id.* at 14. Officer Thomas and Officer Lanier went up the stairs, and from the landing Officer Lanier spotted a man's legs sticking out from under the bushes in a fenced backyard behind the apartment building. *Id.* at 37-38. Officer Thomas held the man at gunpoint from the landing while Officer Lanier and other officers entered the backyard to secure the subject. *Id.* at 35-37, 43.

The subject was lying face down on a concrete patio between the back door and a planting bed containing bushes and pine straw. *Id.* at 43. Officer Lanier and Lt. Pescia ordered the subject to show them his hands, but he kept his left hand up under the bushes. *Id.* The officers took control of the subject's arms and handcuffed him. *Id.* Officer Lanier picked up a blue Adidas backpack that was lying at the subject's feet. *Id.* at 44. He looked in the backpack and found pistol ammunition. *Id.* at 47. Officer Lanier and Lt. Pescia then

3

found two pistols lying under the bushes in the pine straw where the subject's left hand had been. *Id.* at 47, 51.

Officer Thomas recognized the subject as the man who had been driving the Kia, and he escorted him with Officer Givan to his patrol vehicle. Tr. (Doc. 48) at 24-25; Thomas Report, Def's Ex. 1 (Doc. 47-2). The subject attempted to flee, and the officers took him to the ground and subdued him. Thomas report, Def's Ex. 1 (Doc. 47-2). Officer Thomas then transported the subject, identified as Cobb, to the Auburn Police Division for booking and issued him eight traffic citations including no tag light, expired tag, switched tag, no driver's license, failure to stop while exiting a private drive, running a red light, reckless driving, and failure to proceed at a reasonable/prudent speed. Def's Ex. 1, Thomas Report (Doc. 47-1). At the time of Cobb's arrest, police ran the serial numbers of the pistols through dispatch and discovered that one of them was stolen. *Id.*; Tr. (Doc. 48) at 48.

### III.   DEFENDANT'S ARGUMENT

Cobb argues that the two guns found under the bushes and the ammunition and other evidence found in the backpack should be suppressed because there was no probable cause to support the initial traffic stop and because the arresting officer did not personally witness the misdemeanor offenses that he was arrested for. Mot. to Suppress & Supplement (Docs. 26 & 44).

## IV. LEGAL STANDARD

### A. <u>Fourth Amendment Standing</u>

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated [.]" U.S. Const. amend. IV.   These rights are personal, and a defendant challenging a search must show that his own Fourth Amendment rights have been violated. *Byrd v. United States*, 138 S. Ct. 1518, 1526 (2018); *Rakas v. Illinois*, 439 U.S. 128, 133-134 (1978).   To do so, a defendant must show both a subjective and an objective expectation of privacy in the place or thing searched.  *Smith v. Maryland*, 442 U.S. 735, 740 (1979); *United States v. Epps*, 613 F.3d 1093, 1097-1098 (11th Cir. 2010).   To establish the subjective element, a defendant must show by his conduct that he actually sought to preserve the place or thing searched as private, thereby manifesting a subjective expectation of privacy. *Id.*  The objective element requires a defendant to show that society is prepared to recognize their subjective expectation of privacy in the place or thing as reasonable. *Id.*  A defendant challenging a search bears the burdens of proof and persuasion on both elements.  *United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998).

The concept that a person must have a cognizable Fourth Amendment interest in the place or thing searched to obtain relief for an illegal search is frequently described as Fourth Amendment standing.  *Byrd*, 138 S. Ct. at 1530.  This inquiry is "'subsumed under substantive Fourth Amendment doctrine,'" and is not distinct from the merits. *Id.* (*quoting Rakas*, 439 U.S. at 139).  It should not be confused with the jurisdictional concept of

standing under Article III.  *Id.  See also United States v. McBean*, 861 F.2d 1570, 1573 (11th Cir. 1988) (holding same).

### B.    Search Incident to Arrest

Police making an arrest are authorized to search a subject's person and the immediate area where they "might reach in order to grab a weapon or evidentiary material" without first obtaining a search warrant.  *Chimel v. California*, 395 U.S. 752, 763 (1969).  *See also United States v. Bennett*, 555 F.3d 962, 966 (11th Cir. 2009) (holding same).  If closed containers or luggage are found within this area, police may open them.  *United States v. Roper*, 681 F.2d 1354, 1358 (11th Cir. 1982) (reversed on other grounds, *United States v. Watkins*, 10 F.4th 1179 (11th Cir. 2021)).

### IV.    ANALYSIS

### A.    The Guns

To suppress the guns, Cobb bears the burden of showing that he personally had an expectation of privacy in the fenced backyard where they were found, and that his expectation was reasonable.  *Minnesota v. Carter*, 525 U.S. 83, 88 (1998); *Cooper*, 133 F.3d at 1398.  To be reasonable, the expectation of privacy must be grounded in concepts of real or personal property law or other similar concepts that society recognizes and permits.  *Carter*, 525 U.S. at 88; *Rakas*, 439 U.S. at 143-144.

Here, police found the guns after 3:00 a.m. under some bushes in a small, fenced backyard behind an apartment building.  Generally, "[t]he private property immediately adjacent to a home is entitled to the same protection against unreasonable search and

seizure as the home itself." *United States v. Taylor*, 458 F.3d 1201, 1206 (11th Cir. 2006). Cobb introduced no evidence and made no argument showing that he leased the apartment, ever stayed there, or even knew the occupant.  Generally, "[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed."  *Rakas*, 439 U.S. at 134.  Under some circumstances, a person may have a legitimate expectation of privacy in someone else's home.  *Carter*, 525 U.S. at 89.  The Supreme Court instructs that "an overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not."  *Id.* at 90.  Of course, a trespasser enjoys no Fourth Amendment rights in property he enters without permission.  *See, e.g.*, *United States v. Curlin*, 638 F.3d 562, 565 (7th Cir. 2011) (collecting cases).

The only reasonable inference from the undisputed evidence here is that Cobb was a trespasser who surreptitiously entered the fenced backyard in the middle of the night without anyone's permission in an effort to evade police.  Cobb has certainly not met his burden of establishing that he was a welcome overnight guest in the apartment, and therefore he cannot contest the police search of the backyard.  Accordingly, his effort to suppress the guns fails.

### B.   The Backpack

The backpack presents a different question.  "[A]n individual generally enjoys a reasonable expectation of privacy in personal luggage."  *United States v. McKennon*, 814

F.2d 1539, 1544 (11th Cir. 1987). The police searched Cobb's backpack without a warrant. Therefore, the Government has the burden of proving that the search fell within one of the recognized exceptions to the warrant requirement, making it reasonable under the Fourth Amendment. *United States v. Freire*, 710 F.2d 1515, 1519 (11th Cir. 1983). The Government argues that police lawfully searched the backpack incident to Cobb's arrest. Tr. (Doc. 48) at 37; Def's Exs. 1&2 Thomas and Pescia Police Reports (Doc. 47-2). Cobb counters that his arrest was unlawful because Officer Thomas lacked probable cause for the initial traffic stop and because the officers making the arrest did not personally witness the misdemeanor offenses for which he was arrested. Mot. to Suppress (Doc. 26) at 3, 7; Supplement (Doc. 44) at 1.

### 1.    The Traffic Stop

Contrary to Cobb's probable cause argument, it is firmly established that police "may briefly stop a moving automobile to investigate a *reasonable suspicion* that its occupants are involved in criminal activity." *United States v. Hensley*, 469 U.S. 221, 226 (1985) (emphasis added). *See also Kansas v. Glover*, 140 S.Ct. 1183, 1187 (2020) (holding same). A mere "hunch" does not create reasonable suspicion, but the standard requires considerably less than a preponderance of the evidence, and certainly less than probable cause. *Glover*, 140 S.Ct. at 1187.

The evidence here shows that Officer Thomas initiated the traffic stop because the Kia's tag light was out, and it had an expired license tag. The Eleventh Circuit has "held repeatedly that a law enforcement officer may stop a vehicle for violating traffic laws or

applicable equipment regulations." *Terrell v. Smith*, 668 F.3d 1244, 1251 (2012).   Under Alabama law, "[e]very motor vehicle shall have a tail lamp or a separate lamp so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly visible from a distance of 50 feet to the rear."[1]   ALA. CODE § 32-5-240(c)(3) (1975).   Violation of this provision is a misdemeanor punishable by a fine of not more than $100 or imprisonment for not more than 10 days.   ALA. CODE § 32-5A-8(a) & (b) (1975) (making all violations of Title 32 of the Alabama Code misdemeanors unless specifically designated as felonies).

Officer Thomas's dash cam video clearly shows him briefly turning off his headlamps once he got behind the Kia, which corroborates his testimony that he did this to confirm that the tag light was out before making the traffic stop.   Tr. (Doc. 48) at 9-11.   He also credibly testified that he could see that the license tag was expired when he pulled up behind the Kia.   *Id; id.* at 28.   Therefore, Officer Thomas had reasonable suspicion based on specific and articulable facts to make the initial traffic stop.   Of course, once Cobb fled from the traffic stop, Officer Thomas had additional grounds to arrest him for violations of Alabama Code § 13A-10-52(b) & (c), which makes it a Class A misdemeanor for a person operating a motor vehicle "to intentionally flee or attempt to evade a law enforcement officer after having received a signal from the officer to bring the vehicle to a stop."   ALA.

---

[1] Improper lights is among the infractions listed in Alabama's Uniform Traffic Ticket and Complaint form found in Rule 19 of the Alabama Rules of Judicial Administration.

CODE § 13A-10-52(b) (1975).  He also ran a red light and exceeded the speed limit. Tr.
(Doc. 48) at 11-12.

### 2.    Warrantless Misdemeanor Arrest

Cobb next argues that his warrantless arrest on misdemeanor charges violated
Alabama Code § 15-10-3 and Alabama Rule of Criminal Procedure 4.1 because the
arresting officers did not witness the misdemeanors.  Mot. to Suppress (Doc. 26) at 3, 7;
Supplement (Doc. 44) at 1.  Both State-law provisions permit law enforcement officers to
make warrantless arrests for any offense, including misdemeanors, committed in the
officers' presence.  ALA. CODE § 15-10-3(a)(1) (1975); Ala. R. Crim. P. 4.1(a)(1)(ii).

As an initial matter, Cobb's reliance on State-law arrest standards to support his
suppression motion is misplaced.  The exclusionary rule is triggered by violations of the
Fourth Amendment, not State-law standards.  *Virginia v. Moore*, 553 U.S. 164, 173,178
(2008) (holding that even "when States go above the Fourth Amendment minimum, the
Constitution's protections concerning search and seizure remain the same. . . . [I]t is not
the province of the Fourth Amendment to enforce state law"); *United States v. Goings*, 573
F.3d 1141, 1142-1143 (11th Cir. 2009) (holding that "it is irrelevant for purposes of the
Fourth Amendment whether [defendant's] arrest violated state law").  Of course, this begs
the question of what the Constitution says about warrantless misdemeanor arrests.

The Supreme Court has refused to "speculate whether the Fourth Amendment
entails an 'in the presence' requirement for purposes of misdemeanor arrests." *Atwater v.
City of Lago Vista*, 532 U.S. 318, 340 n. 11 (2001).  The Eleventh Circuit "noted in passing"

in a footnote in a pre-*Moore* 42 U.S.C. § 1983 case that "every circuit that has addressed the issue has held that the Fourth Amendment does not include an in-the-presence requirement for warrantless misdemeanor arrests." *Knight v. Jacobson*, 300 F.3d 1272, 1276 n. 3 (11th Cir. 2002) (collecting cases).  However, *Moore* later held that "warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution[.]" 553 U.S. at 176.  While this holding does not necessarily mean that warrantless arrests for misdemeanors committed outside the presence of the arresting officer are constitutionally prohibited, it at least raises the question.

Fortunately, under the facts here, it is unnecessary for the Court to resolve this issue because Cobb committed several misdemeanors in the presence of Officer Thomas who participated in his arrest and ultimately took him into custody.  The evidence establishes that Officer Thomas held Cobb at gunpoint from the second-floor landing while Officer Lanier, Lt. Pescia, and other officers entered the backyard and eventually handcuffed him. Officer Givan and Officer Thomas then walked Cobb to Officer Thomas's patrol vehicle, and, after a brief scuffle, Officer Thomas transported him to the Auburn Police Division for booking.  The Eleventh Circuit instructs that when police officers work together as a team "the collective knowledge of the investigating officers [may] be imputed to each participating officer." *Terrell*, 668 F.3d at 1252 (approving car stop for no lit headlights infraction based on information provided by other officers).  *See also United States v. Becker*, 762 F. App'x 668, 671 (11th Cir. 2019) (holding that "[c]ourts may examine the

11

collective knowledge of law officers where the officers maintained a minimum level of communication during their investigation").

The officers here were dealing with a potentially dangerous suspect who fled from a car stop in the middle of the night, hid under the bushes in a dark, fenced backyard, and turned out to be armed with two pistols. The touchstone of the Fourth Amendment is reasonableness, and nothing in that standard requires the witnessing officer to act alone when making an arrest. Even assuming for purposes of this motion that the Constitution imposes an in-the-presence requirement for misdemeanor arrests, it is sufficient under the collective knowledge doctrine for the offense to have been committed in the presence of any officer on the arrest team. *Terrell*, 668 F.3d at 1252. *Becker*, 762 F. App'x at 671. It makes no difference which officer on the team first spotted Cobb under the bushes or first handcuffed him as long as Officer Thomas, the witnessing officer, participated in the arrest and minimally communicated his knowledge to other team members. *Id.* The undisputed evidence here shows that he did. Therefore, Cobb's arrest on misdemeanor charges was reasonable under the Fourth Amendment. In addition, once police ran the serial numbers for the pistols and discovered that one of them was stolen, there was probable cause for a felony arrest, which has no in-the-presence requirement. Tr. (Doc. 48) at 48.

Accordingly, because Cobb's arrest was lawful, the officers were entitled to search the backpack found immediately adjacent to his feet incident to his arrest. *Roper*, 681 F.2d at 1358 (holding that police making an arrest may open closed containers or luggage found

within the area where a person might reach in order to grab a weapon or evidence immediately after their arrest).

## V.    CONCLUSION

For the reasons stated above, it is the RECOMMENDATION of the Magistrate Judge that Cobb's Motion to Suppress (Docs. 26 & 44) be DENIED.  It is further

ORDERED that the parties shall file any objections to this Recommendation on or before July 20, 2022.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1.  *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

The Federal Defenders Office is directed to provide a copy of this recommendation to Defendant Cobb.

DONE this 6th day of July, 2022.

Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE